HENRY SCOTT and BETHIAR C. SCOTT, Respondents, *v.* STANLEY LOCKWOOD and JESSIE LOCKWOOD, Appellants.

*Farm lease — a provision as to the return by the tenant of the number of cows leased with the land — agreement by the lessor to replace " any cow (which) proves a failure " construed.*

A lease of a farm and of certain personal property recited that the lessors leased " their farm consisting of 84 acres * * * with thirteen average cows, the second party (the lessees) to return thirteen cows in as good condition as when taken, with the privileges and appurtenances, for and during the term of one year." Such lease also provided that " if any cow proves a failure the first party (the lessors) is to replace with an average cow." A few days before the lease expired one of the cows died, in consequence, as the jury were justified in finding, of the negligence of the lessees in allowing it to eat apples.

*Held,* that the lessors were entitled to recover from the lessees the value of the cow which had died;

That the dead cow had not proved "a failure " within the meaning of the farm lease.

McLENNAN, P. J., and WILLIAMS, J., dissented.

APPEAL by the defendants, Stanley Lockwood and another, from a judgment of the County Court of Allegany county, entered in the office of the clerk of the county of Allegany on the 5th day of January, 1904, upon the decision of the court, affirming a judgment of the Justice's Court in favor of the plaintiffs.

*Stanley C. Swift,* for the appellants.

*Harry E. Keller* and *J. C. Leggett,* for the respondents.

HISCOCK, J. :

The plaintiffs recovered their judgment against the defendants for the value of a cow, and this appeal, questioning the correctness of said judgment, involves an interpretation of the rights of the parties under a farm lease made by the plaintiffs to the defendants. We believe that such interpretation leads to an affirmance of the judgment.

The plaintiffs made their lease of a farm and certain personal property, including some cows. The lease and contract was in writing and contained two clauses which merit consideration. The

first one is to the effect that the parties of the first part, plaintiffs herein, have leased "their farm consisting of 84 acres * * * with thirteen average cows, the second party (defendants herein) to return thirteen cows in as good condition as when taken, with the privileges and appurtenances, for and during the term of one year." The second clause is to the effect that "if any cow proves a failure the first party (plaintiffs) is to replace with an average cow."

A few days before the lease expired one of the cows died. Plaintiffs did not replace it and defendants did not return in its place another cow. This action was brought to recover the value of the cow which had died, and defendants urge in substance that, within the meaning of the lease, this cow had proved a "failure," and that it was the duty of the plaintiffs to replace it, and that they having failed to discharge their obligation, defendants in turn were relieved from theirs to return the cow or one in its place.

In determining the obligation of the defendants to return a cow in the place of, or else pay for, the one which had died, we do not regard the clause requiring plaintiffs to replace the cow as much more than incidental. If the cow died under such circumstances as to make the defendants liable for it, then of course it would not be the duty of the plaintiffs to replace it, and if, upon the other hand, the death occurred under such circumstances that the defendants were not in any way responsible for it or to be charged with its consequences, a recovery cannot be had against them for the value of the cow whether plaintiffs replaced it or not, and we, therefore, come to the precise and narrow question whether, upon the evidence in this case, the defendants have exonerated themselves, under their contract, from liability to return or respond for the value of this cow.

In discussing this question we think that in behalf of appellants use is made of some illustrations which are not applicable and some facts assumed which were not proved. It is suggested in substance that if lightning had killed this entire herd of cattle it would be extremely inequitable and illegal to compel the defendants either to replace or pay for them. We shall concede, without stopping to decide whether it is so, that if some such cause as that suggested, and for which the defendants were in no manner whatever responsible, had destroyed the entire herd of cattle, the defendants would

not be compelled to replace or pay for them. But that, as we shall see, is not this case.

Neither can it be said that the cow died without any negligence upon the part of the defendants. There is nothing whatever to show that the jury in the Justice's Court made any such finding as that. Upon the other hand, this court must assume, in the consideration of their general verdict, that they found directly the contrary, and that leads us to a brief review of the evidence.

The evidence warrants, if it does not absolutely require, the conclusion that the cow died as the result of eating apples while it was in the custody of the defendants and upon the farm which they had leased and were operating. The jury had a right to find that this caused the death, and that it was negligence for the defendants to allow the cow to be where it would get improper food which would cause its death. This was one of the issues which the evidence presented to the jury. The pleadings were broad enough to cover that issue, and the objection that evidence tending to show negligence upon the part of the defendants was not admissible was distinctly raised upon the trial and overruled. There was no charge to the jury, and, therefore, nothing upon the record to show what questions were submitted to or passed upon by them, and we must assume, for the purpose of upholding the verdict and the judgment entered thereon, that they made such findings upon any of the issues which were submitted to them as warranted their verdict.

We, therefore, have it not only that the defendants have not excused themselves from redelivering this cow by showing that its death resulted from some cause over which they had no control, or by showing even that they were not negligent as to causes within their control, but that, upon the other hand, the evidence warranted the conclusion, and the jury have found, that they were negligent.

It may be said that the learned county judge and the counsel have not attempted to sustain their action upon this theory. That, however, is immaterial. The verdict was rendered upon all of the evidence before them, and upon very familiar principles the plaintiffs have the right to have it sustained upon any theory which is applicable.

Neither are we able to see anything especially inequitable or unjust in the results which flow from this conclusion. While it is

proper enough that the plaintiffs should bind themselves to replace any cow which proved a failure, from inherent causes, or from causes over which the defendants had no control, it is, upon the other hand, perfectly proper that defendants who were to have the use and custody and the care of the live stock should assume the responsibility of caring for it properly, and if they failed to do this, of answering for the consequences.

The defendants apparently to this effect practically interpreted and construed the lease and their rights thereunder, when, as appears without contradiction, they voluntarily offered to pay plaintiffs fifteen dollars for the cow which had died and which they were thus unable to return.

The judgment is affirmed, with costs.

All concurred, except McLENNAN, P. J., who dissented in an opinion, and WILLIAMS, J., who dissented on the ground that the death of the cow was not the result of any negligence of the defendants.

McLENNAN, P. J. (dissenting):

I cannot assent to an affirmance of the judgment appealed from, because, as it seems to me, while the amount involved is not large, injustice would result in this case and would involve such an interpretation of contracts which are in common use between tenant and owner of farm lands as will unsettle the rights of such parties as they have uniformly been understood to exist.

By the judgment the plaintiffs were awarded the value of one cow belonging to them and which died while in defendants' possession as tenants of plaintiffs' farm under a written lease, a copy of which is annexed to the complaint. The term of the lease was for one year, commencing on the 1st day of November, 1901, and ending on the 1st day of November, 1902. The plaintiffs agreed thereby to furnish to the defendants upon said farm " thirteen average cows " and " if any cow proves a failure, the first party (the plaintiffs) is to replace with an average cow." The second party (the defendants) agreed to pay " for the use of said premises and rent of thirteen cows, $195.00 to be paid at the rate of $15.00 per cow." The defendants also agreed " to return (to the plaintiffs) thirteen cows in as good condition as when taken."

On the 26th day of October, 1902, five days before the expiration of the lease, one of the thirteen cows died, and then unquestionably proved " a failure" under the terms of the contract, and it is not claimed that the plaintiffs replaced such dead cow " with an average cow " or with any cow.

Immediately upon the death of such cow the plaintiffs caused a post mortem examination to be made of her by a veterinary surgeon, who was sworn on behalf of the plaintiffs on the trial; he testified in substance that the death of the cow resulted from eating apples which caused inflammation of the stomach and part of the bowels.  The witness also testified — and it was not controverted — that there was an orchard in the pasture of the plaintiffs.  Under the proof made by the plaintiffs I do not think it was necessary for the defendants to give evidence tending to prove that the death of the cow was caused without negligence on their part; they could not have more effectually established that proposition than had already been done by the plaintiffs' evidence, to wit, that there was an orchard in the pasture of the farm which they rented from the plaintiffs; that the cow, running in such pasture, had eaten apples, which caused her death.  The defendants could not have produced evidence which would have more effectually exonerated them from a charge of negligence in the premises.  But in addition it may be said that the complaint, which is in writing and is a formal document, contains no allegation of negligence.  The sole cause of action alleged is that the defendants failed " to return to said plaintiffs thirteen cows in as good condition as when taken," although said lease had expired.  The answer of the defendants, which is also in writing, only puts in issue the interpretation of the lease.  It alleges that by the terms of the agreement if any cow proved " a failure " it was incumbent upon the plaintiffs to replace said cow with " an average cow ;" that this the plaintiffs had failed to do, and that, therefore, the defendants are not liable.

The learned county judge, as appears by his opinion, affirmed the judgment upon the theory that as the lease contained the provision, " the second party to return thirteen cows in as good condition as when taken," and the clause " if any cow proves a failure the first party is to replace with an average cow," it rendered the meaning of the lease " equivocal and ambiguous and the interpretation of the

two sentences depends upon the minds and intent of the parties executing the lease; that it raised a question of fact for the jury to determine, and they having determined that fact in favor of the plaintiffs, their verdict should not be disturbed." No suggestion that the death of the cow was due to the negligence or inattention of the defendants, or that upon the evidence they were not fully absolved from such charge, was made the basis for sustaining the judgment by the County Court, and no suggestion of that kind is made by respondents' counsel as a ground for sustaining the judgment. The respondents' counsel, as did the county judge, seeks to sustain the plaintiffs' right to recover solely because of the provision in the contract which requires the defendants " to return thirteen cows in as good condition as when taken," the county judge holding that by reason of the other provision, "if any cow proves a failure the first party is to replace with an average cow," the contract was rendered ambiguous, and, therefore, that it was permissible for the jury in Justice's Court to determine what it meant.

I think the terms of the lease are not ambiguous; that as matter of law its true meaning may be determined. If the thirteen cows had been killed by lightning in July, could it have been successfully contended that the defendants, notwithstanding the plaintiffs' neglect to replace them with "average" cows, would be liable for fifteen dollars per cow as rent for the premises, and also to return thirteen cows at the expiration of the term? The proposition impresses me as being absurd in the extreme. The same rule, however, would apply in the case of the death of one cow, caused without fault or neglect of the defendants, as in the case of the entire herd. The same principle of law would govern in the interpretation of the contract in the one case as in the other. It seems to me that in the case of the death of the entire herd or of any one of such herd without the fault or neglect of the defendants, that under the plain terms of the contract it was incumbent upon the plaintiffs to replace such cow or cows with other or another "average cow;" that then it would be incumbent upon the defendants to pay the specified rent, to wit, fifteen dollars per cow, and return such cows so originally or subsequently delivered to them in as good condition as when they were received. The interpretation of the contract in that regard can be no different because a cow died four days before the expira-

tion of the term than if she had died four months before said date. The interpretation of the contract, as evidenced by the judgment appealed from, made the defendants insurers of the cows which were delivered to them by the plaintiffs. Without fault or neglect on their part — and, as we have seen, no issue of that kind was raised nor was it suggested in the brief of the respondents' counsel — the defendants would be liable for every cow which might die during the term of their lease, and logically would be liable for the rental of such cow, no matter when she died. It seems to me that the logical meaning and interpretation of the contract is in full accord with the equities, to wit, that the plaintiffs were obligated to furnish to the defendants thirteen cows in the first instance; that if any of such cows proved a failure either by death or otherwise, without the fault or neglect of the defendants, the plaintiffs were required to replace them with "average" cows; that such cows so originally or subsequently furnished, defendants were obliged to return to the plaintiffs in as good condition as when received by them. Immediately upon the death of the cow in question, it having occurred without the fault or neglect of the defendants, it was the duty of the plaintiffs to have replaced said cow with an "average cow." It then would have been incumbent upon the defendants to have returned it together with the other twelve cows to the plaintiffs in as good condition as when received by them.

These considerations lead me to the conclusion that the judgment appealed from should be reversed, with costs to the appellants.

Judgment affirmed, with costs.